UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

v.

**AFFIDAVIT**

**RENATO BENITES ECHEGARAY**                             **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Zachary Travis, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been so employed since November 1st, 2021. Prior to my assignment as a Task Force Officer, I was promoted from Patrol Officer to Detective at the Nicholasville Police Department on March 16th, 2020. I have been employed as a police officer for 9 years. As a Task Force Officer with the DEA, my duties have included the investigation of violations of federal laws concerning the importation, manufacture, possession, and distribution of controlled substances as defined by Title 21 of the United Stated Code. Those controlled substances include cocaine, heroin, fentanyl, methamphetamine, and other illicit drugs. I am authorized and have the responsibility to investigate and arrest persons for violations of federal law, including violations involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering (18 U.S.C. § 1956 and 1957), and various firearms offenses (18 U.S.C. § 924(c) & 18 U.S.C. § 922(g)).

2. During my tenure as a police officer and Task Force Officer, I have participated in numerous investigations involving drug trafficking and have attended numerous specialized training schools conducted by other law enforcement agencies. Some of the trainings I have attended include Department of Criminal Justice Training (DOCJT) courses, such as the Kentucky Drug Investigations course; the DEA Basic Narcotics Investigations course in Richmond, Kentucky; and the Drug Enforcement Administration Task Force Officer School in Stafford, Virginia. I have participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, interdictions, and arrests of drug traffickers. In my capacity as a DEA Task Force Officer, I am authorized to apply for an arrest warrant under Rule 4.1 of the Federal Rules of Criminal Procedure.

2. Based on my training and experience, I am aware that drug dealers commonly possess large amounts of U.S. currency and/or other valuables that are the proceeds from unlawful drug trafficking; possess and utilize firearms to protect their drugs, assets, and themselves; utilize vehicles to transport drugs, money, and firearms; hide and store drugs, money, firearms, and drug-related contraband inside their residence or buildings, on their property, and/or in their vehicles; and utilize computers, tablets, smart phones, cell phones and other electronic devices to communicate with drug trafficking organization members and customers and to store information related to drug trafficking activities.

3. Based on the following information, I believe that there is probable cause that from on or about January 29, 2025, to October 14, 2025, in Fayette County, in the Eastern District of Kentucky, and elsewhere, Renato BENITES Echegaray ("BENITES") did knowingly and intentionally conspire to distribute 500 grams or more of a mixture or substance containing a

detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § § 841(a)(1).

    4.    This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state and local law enforcement officers during the course of their official duties. The information contained in the affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause.

## PROBABLE CAUSE

    5.    Renato BENITES Echegaray is well-known to drug investigators. Beginning no later than July 2024, federal and local law enforcement were investigating BENITES for his involvement in large-scale drug trafficking offenses in the Eastern District of Kentucky and elsewhere. Through months of surveillance, investigators identified his primary residence (on Red Clover Lane in Lexington), his secondary residence (on Pleasant Ridge Drive in Lexington) and his stash house (on Aspen Street in Lexington).

    6.    On January 29, 2025, FBI Task Force Officer Matt Evans and others were conducting surveillance of BENITES as he left his residence on Red Clover. FBI Task Force Officer Evans has known BENITES since 2013, when he interviewed him in regard to another large-scale drug investigation. Investigators knew that BENITES often conducted drug transactions in the Hamburg area. Investigators followed as BENITES arrived at the Malone's parking lot on Pleasant Ridge Drive in Lexington, in the Hamburg area. BENITES was operating his 2015 Chevrolet Suburban with Kentucky registration #C3Y702, which was known to investigators. A judicially approved tracking device was affixed to the vehicle to allow investigators to monitor its location. BENITES was the only individual in the Suburban.

BENITES was observed meeting with an individual in a white GMC pickup truck. The driver of the pickup truck has been identified. After the white GMC truck and the Suburban left from the Malone's parking lot, investigators requested assistance of the Kentucky State Police to conduct a traffic stop of the white GMC truck.

7. Once the GMC truck was stopped by KSP officers, a narcotics detection canine (or K-9) conducted a free air sniff of the vehicle. The dog alerted to the odor of narcotics emanating from the vehicle. The vehicle was searched. Officers located one kilogram of suspected cocaine. Later testing by the KSP Laboratory confirmed that the substance was 1,017.4 grams (or just over one kilogram) containing cocaine, a Schedule II controlled substance. I know, based on my training and experience, that one kilogram of cocaine is consistent with distribution rather than mere personal use. After being *Mirandized,* the individual admitted that he obtained the kilogram of cocaine from the individual in the dark grey Chevrolet Suburban in the Malone's parking lot.

8. On October 14, 2025, members of the Lexington Police Department's Narcotics Enforcement Unit obtained state search warrants for the Aspen Street stash location and BENITES' current residence at Pleasant Ridge Drive. Execution of the warrant at the Aspen Street location resulted in the seizure of approximately 1 and ¼ kilograms of substances believed to contain cocaine. A preliminary examination of the suspected cocaine, utilizing TruNarc, revealed that the substances likely contain cocaine. I am familiar with TruNarc and know that it is a reliable tool for a preliminary determination that a substance contains a controlled substance. An occupant of the residence advised police that s/he stores quantities of controlled substances at the residence on behalf of Renato BENITES, distributes smaller quantities of controlled substances, and that BENITES is the owner of the 1 and ¼ kilogram (approximate) quantity of

cocaine. I know, based on my training and experience, that one kilogram (or more) of cocaine is consistent with distribution rather than mere personal use. Execution of the search warrant at BENITES' residence on Pleasant Ridge Drive resulted in the seizure of approximately $20,000 in U.S. currency that is likely drug proceeds.

9. On October 14, 2025, BENITES was arrested for state offenses of trafficking in a controlled substance in the first degree.

## CONCLUSION

10. I believe that the facts set forth above support that there is probable cause to believe that from January 29, 2025 until on or about October 14, 2025, in Fayette County, in the Eastern District of Kentucky, Renato BENITES Echegaray did knowingly and intentionally conspire to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

I declare under the penalty of perjury that the above statement is true and correct to the best of my knowledge, information, and belief.

    /s/ Zachary Travis
Zachary Travis, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me telephonically on this the 15th day of October 2025.

MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE